185 So.2d 113 (1966)
Mrs. Sybil Laura Hingle AZAR
v.
Alexander James AZAR, Sr., et al.
No. 2116.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1966.
*114 Tucker & Schonekas, Gibson Tucker, Jr., New Orleans, for Dr. Alexander J. Azar, Sr., defendant-appellant.
Montgomery, Barnett, Brown & Read, Henry J. Read, New Orleans, for Alexander James Azar, Jr., defendant-appellant.
Henican, James & Cleveland, Murray F. Cleveland, New Orleans, for Mrs. Sybil Laura Hingle Azar, plaintiff-appellee.
Before McBRIDE, YARRUT, and BARNETTE, JJ.
BARNETTE, Judge.
This proceeding was initiated by Mrs. Sybil Laura Hingle Azar against her former husband, Alexander James Azar, Jr., and his father, Dr. Alexander James Azar, Sr. It is an attack based on fraud and simulation upon a purported dation en paiement from Azar, Jr., to Azar, Sr., dated June 17, 1957. By exception of no cause or right of action the defendants attacked a declaration of family home made by plaintiff on June 4, 1957, designating as the family home the property in question. By alternative demand in reconvention, the defendant Dr. Azar prayed for judgment against the community existing between Azar, Jr., and his wife in the amount of $81,436.12 for money loaned.
The designation of family home was executed in accordance with the provisions of LSA-R.S. 9:2801-9:2802 during the existence of the marriage and was filed and recorded six days before the execution and recording of the purported dation en paiement. The property in question is the former family home of Mr. and Mrs. Azar at 6308-6310 Canal Boulevard[1] in the City of New Orleans. The cost of the lot and improvements was in excess of $80,000.
The issues were resolved in favor of plaintiff in the trial court, and judgment was entered holding the dation en paiement *115 to be a simulated and fraudulent act, null and void; and defendants' demands in reconvention were dismissed. From that judgment a devolutive appeal was taken on behalf of both defendants.
An answer to the original petition was filed on behalf of the defendant Alexander James Azar, Jr., but he made no personal appearance at the trial below and his absence was not explained by his father, the co-defendant. A few days before the argument on appeal was heard, the defendant-appellee Azar, Jr., filed an appearance in this court which reads as follows:
"Now comes Alexander J. Azar, Jr., defendant in the proceeding below and appellant in this proceeding, and takes cognizance of the proceedings in the District Court and in the Court of Appeal, expressly acquiesces in the judgment of the District Court, and waives any and all right which he has or may have to object to, appeal from, or seek review of, the judgment of the District Court from which an appeal was perfected for and on behalf of Dr. Alexander J. Azar, Sr."
Counsel for appellant Dr. Azar have stated in their brief that they were authorized to enter pleadings for Azar, Jr., by his father and mother at a time when he was in the State of Hawaii. We have no doubt whatever of counsel's good faith in believing the representation of Dr. Azar, particularly in the light of the facts disclosed by the record in a prior suit on these issues. Whatever his motives may be, we must hold that Azar, Jr., is not an appellant before us and that the judgment, as far as he is concerned, is final.
This is one of several suits between the parties arising out of their marriage failure. A chronology of events leading to the issues presently before us will be helpful in reaching a just decision.
Mr. and Mrs. Azar were married in December, 1954, and two children were born of their marriage, November 28, 1955, and March 1, 1957. After several episodes of marital difficulty, they finally separated during the first week of June, 1957. On August 24, 1955, the community acquired by purchase for $12,500 two lots on Canal Boulevard in the City of New Orleans and built a duplex thereon. The Azars moved into the lower apartment in December, 1956, which they occupied as a family home, and rented the upper apartment.
Following their separation, Mr. Azar filed suit No. 354-662 on the docket of the Civil District Court for the Parish of Orleans, on June 17, 1957, charging his wife with abandonment of the family home on or about June 5, and prayed for a judgment of separation from bed and board. Mrs. Azar answered denying abandonment and by reconvention prayed for judgment in her favor granting separation from bed and board on the ground of cruelty. She alleged specifically a series of violent and abusive acts beginning shortly after their marriage which on prior occasions had forced her to leave her husband temporarily for the safety of herself and her child. She admitted leaving the marital domicile on or about June 5, 1957, because of the alleged violent and abusive acts of her husband. A preliminary judgment of custody and alimony was rendered on rule, but the case was never brought to trial on the merits.
On July 25, 1957, Mrs. Azar brought suit No. 355-399 on the docket of the Civil District Court against Dr. Alexander James Azar, Sr., and her husband, Azar, Jr., attacking the dation en pavement executed June 17, on the grounds of fraud and simulation substantially as alleged in the present suit. After trial on the merits her suit was dismissed on exception of no right of action based on the fact that there had been no judgment in the pending suit for separation, No. 354-662, and that the community had not been dissolved. This judgment was affirmed by the Supreme Court on appeal. Azar v. Azar, 239 La. 941, 120 So.2d 485 (1960).
*116 In the meantime, while the foregoing suit was pending on appeal, Mrs. Azar filed suit No. 362-902 against her husband alleging "that on June 5, 1957, petitioner and defendant separated from each other" and that they had "voluntarily lived separate and apart for more than one year" since June 5, 1957, and prayed for judgment of separation from bed and board. An answer was filed admitting the essential allegations, and judgment as prayed was granted Mrs. Azar, July 8, 1958. On July 10, 1959, a petition for final divorce was filed by Mrs. Azar in that proceeding alleging no reconciliation, and judgment by default was rendered granting her an absolute divorce, October 19, 1959.
The present suit attacking the dation en paiement was filed July 28, 1959. At the trial on the merits the records in the other suits were filed in evidence including the transcripts of testimony. As stated above the defendant Alexander James Azar, Jr., did not appear at the trial of the instant case, but we have for consideration his testimony in the transcripts in the other suits.
The declaration of family home of June 4, 1957, was attacked as a nullity on the ground that Mr. and Mrs. Azar were not living together in the family home at 6310 Canal Boulevard on that date. This attack was rejected by the trial court, and Azar, Jr., the husband, has acquiesced in that judgment and renounced the appeal taken on his behalf. His father, co-defendant, transferee of the property in the dation en paiement and appellant herein, has reurged this attack before us, relying principally on Hodges v. Hodges, 150 So.2d 884 (La.App.1st Cir.1963).
In the Hodges case the wife filed suit for separation on June 8, 1961, on the ground of extreme cruelty. On August 15, 1961, the case was tried, and plaintiff's suit was dismissed for want of proof. On that date the wife filed a declaration of family home. On August 31, the husband executed an act of retrocession in favor of his father purporting to transfer the family home in satisfaction of an indebtedness. On October 4, the husband sued his wife for separation alleging that she had abandoned him on June 8. In answer the wife denied that the husband had always conducted himself properly, and admitted "the remaining allegations contained in Paragraph Four (4) of plaintiff's petition." By this answer she judicially admitted the abandonment alleged. Judgment of separation from bed and board was granted the husband on the pleadings without opposition. Thereafter Mrs. Hodges brought suit to annul the act of retrocession and sought recognition of her community interest in the property by virtue of her declaration of family home. The Court of Appeal affirmed the judgment of the district court dismissing the wife's suit against the transferee and ordering the declaration stricken from the record on the ground that it was invalid.
The Hodges case is clearly distinguishable from this case and does not support the contention made by defendant Azar, Sr. It will be noted that in the Hodges case there was a judicial admission by the wife of her abandonment of the family home on June 8, and a judgment of separation was rendered against her on this basis. It was two months and one week after this abandonment that the wife filed the declaration of family home.
LSA-R.S. 9:2801 and 9:2802 provide as follows:
"Whenever there has been recorded in the conveyance records of the parish in which it is located, a description sufficiently definite to identify any parcel of land, together with the authentic declaration of the owner that he is a married man and that he desires to and does designate the property as a family home, it may not thereafter be validly sold or mortgaged during the marriage by the husband except with the consent of his wife expressly set forth in the act, and *117 signed by her or her duly authorized attorney in fact." LSA-R.S. 9:2801.
"If the husband neglects for a period of six months after the acquisition of a home, to file and record the declaration as provided in R.S. 9:2801, his wife, who is living with her husband, may make, and record an authentic declaration as provided in R.S. 9:2801. A declaration made by the wife shall be limited to community property occupied as a home, and in case of city, town, or village property shall include not more than one lot or lots of ground on which the family residence is actually situated, and in case of rural property shall include not more than twenty acres of land on which the family residence is situated." LSA-R.S. 9:2802. (Emphasis added.)
The requirement of the foregoing section to which we have added emphasis was wanting in the Hodges case, and a strict interpretation of the law supports the conclusion reached in that case.
In the instant case the declaration of family home was executed by the wife on June 4. Notwithstanding the husband's petition and the wife's answer in suit No. 354-662 that the wife left the husband and the family home "on or about June 5," and the wife's petition and husband's answer in suit No. 362-902 "that since June 5, 1957 * * * [they had] voluntarily lived separate and apart," and other references in the pleadings and testimony fixing June 5 as the date of their separation; the evidence conclusively shows that Mrs. Azar physically left the family home during the night on a date between June 1 and June 4, seeking refuge at the home of a friend, and did not return to the home to live after the execution of the declaration on June 4. From this fact the defendant-appellant Azar, Sr., argues that she abandoned the family home prior to June 4, that she was not "living with her husband," as required by LSA-R.S. 9:2802, and that the declaration of family home is a nullity.
We cannot agree with appellant's contention. If carried to its ultimate conclusion, it would lead to an absurdity and would deny to a wife the protection of the statute. Counsel for appellant was asked from the bench when the case was argued before us if he meant by this contention that a wife who had to flee from the home in the night to escape the abuse of a violent husband and who upon the opening of her lawyer's office the next morning immediately executed a declaration of family home could not claim the protection of the statute unless she returned to the home and ran the risk of further abuse. Counsel answered that such would be the case under a strict interpretation of the statute. We must reject this interpretation.
While the first suit for separation brought by Mr. Azar against his wife alleged abandonment and her answer and reconventional demand denied abandonment and recited in detail a long series of episodes of violence and cruelty, the issue of abandonment versus cruelty was never judicially determined as it was in the Hodges case. The pleadings upon which the judgment of separation from bed and board in favor of the wife against her husband, and by which both of them are bound by their judicial declarations, establishes that they "separated from each other" and "since June 5, 1957 * * * have voluntarily lived separate and apart."
Abandonment, as it relates to husband and wife, means a withdrawal of one of the spouses from the common dwelling without lawful cause and a constant refusal to return when such refusal is made to appear in the manner directed by law. LSA-C.C. art. 143. There was no abandonment within the meaning of the law in this case. Furthermore, the state of living together as man and wife is largely a matter of intention and not wholly determined by constant physical presence of the parties together in the same house. Just when Mr. and Mrs. Azar *118 finally arrived at the state of mind constituting an intent no longer to live together as man and wife is best determined by their mutual judicial declarations upon which judgment of separation from bed and board was granted. This was June 5, 1957, the day after the declaration of family home was executed.
The transcripts of testimony in the suits between Mr. and Mrs. Azar, all of which have been made a part of the record in this case, clearly show that on more than one occasion Mrs. Azar left the family home at night and took her infant children to a friend's home leaving her clothes and personal effects behind. On prior occasions she returned to resume living in the family home. On the last occasion, about June 1, 1957, she did as before, leaving behind her clothing and personal effects and those of the children. She returned for these things after June 4, but did not again live in the family home with her husband. She did not establish a home or residence for herself and children elsewhere until sometime after June 4. We therefore hold that on June 4, 1957, the residence at 6310 Canal Boulevard was the family home of Mr. and Mrs. Azar. Admittedly she was not physically in the home on June 4 when the declaration of family home was executed and did not thereafter physically return to the home to live with her husband, which a narrow interpretation of LSA-R.S. 9:2802 would seem to require. But we do not agree to an interpretation that would require her to return and physically live with her husband, with all of its implications, for a time, however brief it might be, as an absolute requirement for the validity of the declaration of family home. Indeed it would be easy to conceive of situations in which such a requirement could produce grave consequences. Such could not be the intent of the law.
Our opinion in this respect is supported by Reymond v. Louisiana Trust & Sav. Bank, 177 La. 409, 148 So. 663 (1933). There the Court rejected the argument that physical living with her husband was an essential requirement to enable the wife to avail herself of the protection intended by the statute. The Court said:
"Counsel for the bank in the present case call attention to the fact that the designation of the home may be made by `his wife, who shall be living with her husband,' and they point out that according to Mrs. Reymond's allegations, she was not living with her husband when she made and filed the declaration. She alleged that her husband had abandoned her but that she continued to occupy the premises as a home. The fact that her husband had abandoned her did not preclude the filing of the declaration. She was living with her husband under the intendment of the act, not being separated from him by judgment a mensa et thoro and not having abandoned him or the family home. The situation was precisely the same in the Mallouf Case [Mallouf v. Fontenot, 170 La. 612, 128 So. 652], were the husband abandoned the wife long prior to the date on which she filed her designation." 177 La. at 425, 148 So. at 667.
The lots in question were acquired by purchase and the house was built thereon during the marriage. Payments for the lots and the improvements were made from funds derived from Mr. Azar's salary of $1,000 per month and from money given to him by his father, Dr. Azar. His personal funds and the money given by his father were commingled in accounts kept in Mr. Azar's name in more than one bank. Neither Mr. Azar nor his father has anything more than a vague recollection of dates and amounts given or advanced by the father to the son. Many times sums in the thousands of dollars passed between them without their making any record of date or amount. There is no doubt that the property in question belonged to the community. LSA-C.C. arts. 2334, 2402, and 2405; Houghton v. Hall, 177 La. 237, 148 So. 37 (1933).
*119 The declaration of family home executed by Mrs. Azar on June 4, 1957, and recorded June 11, 1957, was timely, and effect must be given to it. It therefore follows that the subsequent attempted dation en paiement did not divest the community of the property, for the husband then had no power or authority either to mortgage or to sell it without her consent. LSA-R.S. 9:2801; Reymond v. Louisiana Trust & Sav. Bank, supra. It is therefore unnecessary that we specifically pass on the questions of simulation and fraud as an additional cause for the nullity of the dation en paiement. However, since Dr. Azar, Sr., appellant, has pleaded in the alternative in reconvention for a judgment against the community in the amount of $81,436.12 as a debt due and owing him for advances made, it will be necessary to determine if the so-called advances were gifts or loans.
The judgment of the district court specifically held the dation en paiement to be a nullity and dismissed the reconventional demands of defendants. Thus it appears that Dr. Azar's alternative demand in reconvention for a judgment against the community was rejected. In his reasons for judgment the judge of the district court found that there was no proof of the existence of a loan from Dr. Azar to his son, Alexander James Azar, Jr., that whatever sums of money which the father provided the son to buy the lots or build the home were gifts; and that there was no intention that the sums be repaid. He supports this conclusion with the following specific findings of fact:
(1) That there was no evidence of any indebtedness. There was no note or instrument in writing. Neither the father nor son could produce any records of dates and amounts borrowed from the father.
(2) That Dr. Azar, Sr., had the financial ability to make gifts of the magnitude alleged. (3) That the son had no resources for the repayment of a loan of this magnitude.
(4) That the time of execution of the dation en paiement was significant. The court found that Mr. Azar was attempting to defeat his wife's community interest in the property.
(5) That the financial transactions between father and son were "most peculiar" and aroused many suspicions. After discussing in some detail the bizarre transactions involving extremely large sums of money stored in lock boxes and office safes, and the mailing, uninsured and unregistered, of a large sum in a shoe box by the father in Chicago to the son in New Orleans,[2] the court concluded that the credibility of the doctor was in his opinion "highly questionable."
A reading of the transcripts of testimony in the several suits referred to, all of which are a part of the record in this case, leads us to the conclusion that the findings of fact of the trial judge set forth in his reasons for judgment are manifestly correct. We therefore hold that Dr. Alexander J. Azar, Sr., defendant, plaintiff in reconvention, appellant herein, has failed to prove an indebtedness on the part of the community. The judgment rejecting his alternative demand is correct and must be affirmed.
Unquestionably Mr. and Mrs. Azar could not have acquired an $80,000 home from their own resources. Dr. Azar, whom the record reveals as an extremely indulgent and grossly imprudent father, gave his son large sums of money on many occasions. The son was given free access, without *120 accounting, to a lock box in a New Orleans bank containing a large sum of money, presumably belonging to his father. On several occasions the father gave the son large sums in cash to purchase expensive foreign sports automobiles. Apparently he quite willingly gave him large sums to apply to the cost of building the home in question. It was not until the marriage of his son and daughter-in-law failed that the character of the gifts were brought into question. Whether the sums given were to the son exclusively or the son and daughter-in-law jointly is of no moment. Definitely the sums advanced were gifts and not loans. No attempt was ever made to keep account of the amounts and dates; no notes or receipts were given and there was never any intention that the sums would or could be repaid.
The rationale of this opinion is somewhat different from that of the district court, although the same result is reached. The district court judgment squarely held that the dation en paiement was an absolute nullity, being an attempt to deprive the plaintiff of her community interest in the property through simulation and fraud, and ordered it cancelled and the inscription thereof erased from the conveyance records. It then rejected and dismissed the reconventional demands. To keep the record straight, it should be pointed out that the attack on the declaration of family home was raised, not in answer or reconventional demand, but by an exception of no cause or right of action. Whether or not the issue of the validity of the declaration was ever properly raised by the pleadings is of no consequence at this stage of the proceeding. LSA-C.C.P. art. 1154.
The rationale of this opinion is that the declaration of family home was valid and effectively prevented the husband Azar, Jr., from divesting the community of the property in question. On this basis we hold the dation en paiement to be a nullity. Obviously the district court meant to hold the declaration of family home to be valid. The judgment should have expressly overruled the exception of no cause or right of action.
The rationale of this opinion makes it unnecessary for us to rule specifically on the questions of fraud and simulation, but we could not avoid holding that there was no debt or obligation to repay the sums advanced to the community in order to reach a judgment dismissing the alternative reconventional demand for a money judgment against the community.
For the foregoing reasons, the judgment appealed from is amended so as to overrule the exception of no cause or right of action filed by defendants directed against the declaration of family home executed on June 4, 1957. The judgment decreeing the dation en paiement executed June 17, 1957, to be null and void, ordering the inscription thereof cancelled and erased from the conveyance records, and rejecting and dismissing the reconventional demands is affirmed. Both defendants are cast for costs of the Civil District Court. Appellant Dr. Azar is to pay the costs of this appeal.
Amended and affirmed.
NOTES
[1] This is a duplex with upper and lower apartments. Mr. and Mrs. Azar occupied the lower apartment.
[2] This transaction was admitted by all the parties. The only dispute is whether it was $6,000; $6,600; $20,000; or more. Neither the father nor son could testify to the exact amount.