HOOD, Judge.
This is a suit on a promissory note, instituted by Dial Real Estate, Inc., against T. H. (Tommy) Isbell. Plaintiff demands judgment for the amount of the note, while defendant contends that he is entitled to a substantial credit on the indebtedness. The trial court rendered judgment in favor of plaintiff for the full amount claimed, and defendant has appealed. We affirm.
The issues are: (1) Should the note be credited with a payment which defendant allegedly made to a person who was not the holder of such note? (2) Is defendant entitled to a set-off on the ground that he became legally subrogated to the rights of a creditor of plaintiff? (3) Should credit be allowed on the note for expenses incurred by defendant because of a breach of warranty by plaintiff ?
Albert M. My rick was adjudicated an involuntary bankrupt in April, 1967, and William T. Sandoz was appointed as receiver and trustee of the bankrupt’s estate. My-rick owned all of the shares of stock in Dial Real Estate, Inc., when the bankruptcy proceedings were filed. A few days before he was adjudicated a bankrupt, however, he attempted to transfer all of that stock to his brother (Walter Thomas My-rick). The trustee in bankruptcy instituted suit to annul the purported transfer as being a fraudulent transaction, and judgment was rendered annulling the transfer and decreeing the trustee to be the owner of the stock.
Among Dial’s assets was the unsecured promissory note on which this suit is based. The note was executed by defendant Isbell, *135 it is made payable to the order of plaintiff, and it is for the principal sum of $16,200.00. The note is dated September 25, 1967, and is due and payable six months after date. There are no endorsers or co-makers on the note, and it is not paraphed for identification with any other document. The note had not matured when Sandoz acquired possession of it.
The note represents the balance due on the purchase price of two tracts of land which Isbell purchased from Dial. On August 9, 1967, Dial executed a cash warranty deed conveying those tracts to Isbell for the price of $18,000.00. Although the deed recited that the entire purchase price was paid in cash, actually only $1,800.00 was paid at the time of the sale, and this note was given for the balance.
According to Barstow’s testimony, the tracts of land conveyed by that deed were burdened with four mortgages at the time the sale was made. The note secured by the first mortgage was for substantially more than the total price which Isbell agreed to pay for this property. The notes secured by the second, third and fourth mortgages were acquired by Barstow before Dial sold the property to Isbell. Albert M. Myrick was the maker of each of these notes, and he was the person who executed the mortgages which secured them. Barstow testified that Myrick and Dial Real Estate, Inc., were indebted to him for legal fees, and that these inferior mortgage notes were assigned to him either to satisfy or to secure the payment of those fees. Isbell admits that he knew when he purchased the property that it was encumbered with these mortgages, but he testified that he had been assured by Myrick and by Barstow that these encumbrances would be cancelled without any additional expense to him.
Shortly after Sandoz acquired possession of the $16,200.00 note, executed by Is-bell on September 25, 1967, he, as owner of all of the stock in Dial, called a stockholders’ meeting and officers and directors of the corporation were elected at that meeting. Sandoz was elected as president. The board of directors met the same day and formally authorized Sandoz to proceed in behalf of the corporation to collect the note. These meetings were held on December 1, 1967.
Sandoz wrote to Isbell on December 1, 1967, informing him that Dial was the owner of that note, and advising that all of the assets of the corporation had been turned over to Sandoz. In that letter to Isbell, Sandoz stated:
“Under no circumstances should you make payment to anyone except to your writer in order to avoid possible duplicate payment, since we are holder of same in our capacity as sole stockholder of Dial Real Estate.”
Sandoz also wrote to Isbell on May 15 and on July 11, 1968, demanding payment of the note. Isbell admits that he received all of the above mentioned letters. No payment was made in response to those demands, however, and this suit was instituted on September 10, 1968.
Isbell, through his attorney Barstow, obtained two extensions of time within which to answer. Despite these extensions, no answer was filed, and on November 29, 1968, Dial obtained a default judgment against Isbell for the full amount claimed. Isbell appealed, but upon joint motion of both parties, an order was issued by this court on April 1, 1969, remanding the case to the district court. Isbell then filed an answer in the trial court, alleging that he made a payment of $10,331.11 to Barstow on November 5, 1968, and that he is entitled to credit for that payment.
At the trial, defendant offered in evidence a check which he had issued to Bar-stow for $10,331.11, dated November 5, 1968, which check was endorsed by Bar-stow. Although the copy of the check which is in the record contains no marks showing that it has been presented to a bank for payment, Dial does not question *136 defendant’s testimony that that amount was paid to Barstow.
Defendant contends that Albert M. My-rick had specifically authorized Barstow to receive and accept payments on the note for Dial, with the understanding that Bar-stow was to retain all such payments made to him until the attorney’s fees owed to him by Myrick and Dial were paid. Isbell contends that Barstow thus had authority to accept the payment he made on November 5, 1968, and that he is entitled to have that payment applied as a credit on the note. Myrick denies that any such authority was ever given to Barstow. The trial judge concluded that defendant had “failed his burden of proving payment,” and he rendered judgment in favor of plaintiff for the full amount claimed.
The defense of payment is an affirmative defense which must be specially pleaded and proved by the party alleging it. LSA-C.C.P. art. 1005; LSA-C.C. art. 2232; Fontenot v. Liberty Mutual Insurance Company, 230 So.2d 402 (La.App. 3 Cir. 1970); American Security Bank of Ville Platte, Inc. v. Vidrine, 255 So.2d 140 (La.App. 3 Cir. 1971).
A party who pleads the defense of payment of a note, alleging that the payment was made to a person who was not the holder of that note, bears the burden of proving not only that the payment was made but also that the person to whom the payment was made had authority to receive it. Henry Knight & Son, Inc. v. Shall, 9 La.App. 98, 119 So. 80 (La.App. Orl. 1928); Powers v. Smith, 6 La.App. 621 (La.App. 2 Cir. 1927). See also Hebert, Negotiable Instruments, 20 La.L.Rev. 266.
In the instant suit no written evidence of Barstow’s alleged authority to receive the payment for Dial has been produced. Barstow testified that he had received that authority orally from Myrick, but My-rick denies this. Myrick, of course, had been adjudicated a bankrupt long before the note was executed, and he took the position in his bankruptcy proceedings that he had previously assigned all of his stock in Dial Real Estate to his brother. His brother, in fact, executed the deed as president of Dial when the property was sold to Isbell about six or seven weeks before the note was executed. Barstow was thoroughly familiar with these facts, because he represented Myrick throughout the entire bankruptcy proceedings, and the deed from Dial to Isbell was executed before him, as notary. Since Myrick had no power to represent Dial, it seems unlikely that he would authorize Barstow to accept a payment on the note in behalf of the corporation, and even if he did it appears to us that Barstow, a lawyer, would not have regarded any such authorization from My-rick as being valid.
Assuming, however, that Barstow did receive authority from Dial to accept payments for that corporation on the note, the evidence shows that that authority was specifically revoked by Sandoz, as president of the corporation, on December 1, 1967, and that Isbell was notified of that fact. In the letter which Sandoz wrote to Isbell on that date, a portion of which letter is quoted above, Sandoz informed defendant that Dial was the holder of the note, and that “Under no circumstances should you make payment to anyone except to your writer.” Barstow acknowledges that he has never been the holder of the note, and Isbell testified that he knew that Barstow was not the holder of it when he made the payment.
We agree with the trial court that the evidence fails to establish that Barstow had authority to accept or receive payment on the note for plaintiff Dial. Our conclusion is that defendant is not entitled to credit for the payment allegedly made to Barstow on November 5, 1968.
Defendant contends, alternatively, that since Barstow was a creditor of Dial, Isbell became subrogated to Barstow’s rights against the corporation to the extent of the $10,331.11 payment which he made on November 5, 1968. The substance of defend *137 ant’s argument is that since he has been subrogated to the rights of Barstow against Dial up to $10,331.11, he is entitled to compensation or set-off of that amount against the note sued upon here, and that Dial thus is entitled to recover only the difference.
Article 2161 of the Louisiana Civil Code provides that:
“Subrogation takes place of right:
“1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.
“2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.
“3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.
“4. For the benefit of the beneficiary heir, who has paid with his own funds the debts of the succession.”
Isbell was not “himself a creditor” of Dial, so the provisions of the first paragraph of the article are not applicable. Paragraphs three and four also do not apply. Defendant contends, however, that the circumstances set out in the second paragraph are present here, and that a legal subrogation thus took place when the payment was made to Barstow.
The evidence shows that each of the three mortgage notes held by Barstow were executed by Albert M. Myrick, personally. None of them were executed by Dial Real Estate, Inc., and there is nothing in the record to show that Dial owed the indebtedness evidenced by those notes. Assuming that a legal subrogation took place as contended by Isbell, therefore, the result would be that Isbell became subro-gated to the rights of Barstow against My-rick. He did not become a subrogated creditor of Dial by virtue of his payment to Barstow, and thus there can be no basis for him to claim compensation or set-off against the debt which he owes to Dial.
Our conclusion is that Isbell did not become subrogated to any rights which Bar-stow may have had against Dial, and that he thus is not entitled on that ground to off-set the payment which he made to Bar-stow against the note sued upon here.
Defendant contends, finally, that Dial warranted the title to the property which was sold to him, and that there has been a breach of that warranty since the property was encumbered by mortgages. He takes the position that he was compelled to pay $10,331.11 to obtain the cancellation of three of those mortgages, and that he is entitled to recover that amount from Dial as damages for the alleged breach of warranty. Defendant has not reconvened for judgment against Dial, but he prays simply that he be allowed a credit of the above mentioned amount on the .note.
Compensation takes place only between two debts having equally for their object a sum of money or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable. LSA-C.C. art. 2209; Pittman Construction Company v. Housing Authority of New Orleans, 169 So.2d 122 (La.App. 4 Cir. 1964); Spencer v. West, 126 So.2d 423 (La.App. 2 Cir. 1961). An unliquidated claim for damages thus cannot be pleaded in compensation against a liquidated claim based on a promissory note. Del Bondio v. Albrecht, 181 So. 610 (La.App. Orl. 1938); McDaniel v. Rumore, 110 So.2d 860 (La.App. 2 Cir. 1959).
Plaintiff’s demands in the instant suit are based on a promissory note. The amount of the note is certain and is uncontested. Defendant’s demands are based on a claim for damages for breach of warranty, and there is a dispute as to whether any such damages are due. The debt alleged by defendant, therefore, is not as liquidated *138 or as demandable as is plaintiff’s claim on the promissory note.
A question is presented, for instance, as to whether it was necessary for defendant to pay Barstow anything to get the second, third and fourth mortgages on the property cancelled. Isbell testified that when he purchased the property the seller and the holder of these mortgages agreed to cancel these encumbrances at no additional cost or expense to him. Under those circumstances there would seem to have been no need for Isbell to make a substantial payment in order to get the mortgages can-celled. Barstow testified that the property was sold at sheriff’s sale, that it was adjudicated to Isbell, and that following that sale the inferior mortgages held by Barstow were cancelled pursuant to an order of the sheriff. This indicates that the inferior mortgages would have been cancel-led regardless of whether a payment was made to the holder of those mortgage notes. Barstow stated that the $10,331.11 payment was made to him in consideration for his agreement to not bid on the property at the sheriff’s sale. And, Isbell testified that “we put it in a sheriff’s sale to get clear title,” indicating that he had some part in provoking the sheriff’s sale. All of this testimony raises serious questions as to whether it was necessary for Isbell to make any payment at all to Barstow because of Dial’s alleged breach of warranty. Although it is unnecessary for us to decide if Isbell is entitled to recover damages for breach of warranty, the above facts are relevant to the issue of whether the two debts involved here are equally liquidated and demandable.
We find that plaintiff’s demands on the promissory note, and defendant’s demands for damages for breach of warranty, are not equally liquidated and de-mandable, and that compensation thus cannot take place between the two debts.
Our ultimate conclusion is that defendant has failed to establish that he is entitled to the credit which he claims, and that there is no error in the judgment rendered by the trial court.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.