453 So.2d 597 (1984)
Johana Walker COBURN, Plaintiff-Appellant,
v.
COMMERCIAL NATIONAL BANK, Defendant-Appellee.
No. 16310-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1984.
Rehearing Denied July 6, 1984.
*599 Pittman, Matheny, Lewis & Moody, by Alton B. Lewis, Jr., Hammond, for plaintiff-appellant.
Cook, Yancey, King & Galloway, by Sidney B. Galloway and Samuel W. Caverlee, Shreveport, for defendant-appellee.
Before HALL, FRED W. JONES and SEXTON, JJ.
SEXTON, Judge.
Plaintiff, Johana Walker Coburn, appeals the rejection of her claim for damages against Commercial National Bank of Shreveport for failure to release a mortgage. We reverse.
The facts which surround the execution of the mortgage and the basis of the claim are complicated and must be set forth in detail. Johana Walker Coburn and James William "Bo" Coburn were married in Texas in the early 1950's. They moved to Shreveport and bought a home on Richmond Street on October 14, 1975, which became their marital domicile. In order to purchase the home, they signed a promissory note secured by a mortgage for $48,500.00 with Home Federal Savings and Loan on October 23, 1975.
Also in 1975, Bo Coburn established an unsecured loan relationship with Commercial National Bank. The loan remained unsecured until 1979 when the obligation exceeded $70,000.00. At this point, the Bank through its senior vice president, Will Jackson, demanded security. Mr. Coburn approached his wife and requested that she sign a second mortgage on the house on Richmond Street which had been prepared by Mr. Coburn's attorney. Mrs. Coburn refused to sign and Mr. Coburn stated that he would "find another way." Mrs. Coburn went to the Bank on August 31, 1979 and met with Mr. Jackson, but it is unclear whether the mortgage was discussed at this meeting.
*600 On October 1, 1979, notwithstanding the lack of his wife's signature, Bo Coburn pledged a collateral mortgage note secured by a second mortgage on the Richmond Street property, and assigned a decreasing term life insurance policy on his life to the Bank as collateral for his debt. Thereafter, Commercial National Bank never contacted Mrs. Coburn for her signature on either the assignment or the collateral mortgage.
The Coburns ceased living together as husband and wife on or about November 20, 1978, and were divorced on December 17, 1980. As part of the community property agreement, Bo Coburn conveyed to Johana Coburn his interest in the house on Richmond Street by cash sale deed signed December 11, 1980. In the community property agreement, Bo Coburn assumed responsibility for the debt to Commercial National Bank, but no mention was made of the second mortgage Mr. Coburn had placed on the home with that bank. Mrs. Coburn assumed the obligation represented by the first mortgage to Home Federal Savings & Loan.
On February 23, 1981, Bo Coburn wrote Will Jackson informing him of the divorce and the transfer of the house to Mrs. Coburn in the property settlement agreement. He requested that Commercial National Bank release the mortgage. Will Jackson replied by letter dated March 2, 1981, stating that the mortgage could not be released unless the note was paid, or other collateral could be substituted.
Finding that she was financially unable to continue the upkeep of the house, Mrs. Coburn decided to sell it. She agreed to purchase another house on Haynes Street in Shreveport from Carolyn and Jerry Webb, which contract was not made contingent upon the sale of her home. General Edgar Harris, Jr. agreed to purchase Mrs. Coburn's house on Richmond Street and Mrs. Coburn intended to apply the money received from the sale of her home toward the purchase price of her new residence on Haynes Street. The Webbs formally acquired their new home on August 5, 1981, and Mrs. Coburn began preparations for moving into their former residence, her new home. An elaborate security system, as well as new carpet, was installed in the house on Haynes Street. Since the transactions were interrelated, Mrs. Coburn and General Harris scheduled closings for the same day, August 7, 1981.
On or about August 6, 1981, Johana Coburn was advised that the attorney performing the title examination for General Harris had uncovered the second mortgage in favor of Commercial National Bank on the Richmond Street property which had been executed on October 1, 1979 by Bo Coburn.
When demand was made upon Mrs. Coburn to extinguish the mortgage prior to transfer of title, she contacted Greg Nesbitt, a family friend and former business associate of Bo Coburn. Nesbitt contacted Mr. Coburn who refused to extinguish the mortgage through payment of the debt. During the evening of August 6, Mr. Nesbitt telephoned Will Jackson of Commercial National Bank and requested that he cancel the mortgage. Mr. Jackson told Mr. Nesbitt that the mortgage could not be cancelled absent payment of the debt or substitution of other acceptable collateral for the loan.
On the morning of August 7, 1981, Greg Nesbitt, accompanied by Fred Miller, an attorney, went to Commercial National Bank on Mrs. Coburn's behalf to meet with Will Jackson and the bank's attorney. After seeking unsuccessfully to have the mortgage released, Mrs. Coburn's representatives negotiated the purchase of the handnote executed by Mr. Coburn and received in return the collateral mortgage note and the decreasing term life insurance policy on Mr. Coburn's life which had been assigned as additional collateral for the debt. In order to satisfy the obligation with Commercial National Bank, Mrs. Coburn paid that bank the sum of $50,196.75. These funds were borrowed from the Bank of Commerce at twenty-one percent interest from August 7, 1981.
*601 Notwithstanding written demand from Mrs. Coburn's attorney, Bo Coburn has made only one payment on the note held by Mrs. Coburn, that being a $3,800 partial interest payment made in December, 1981.
Johana Walker Coburn brought suit against Commercial National Bank on November 27, 1981, claiming that the wrongful action of the defendant in failing to release the mortgage on community property, executed with express knowledge by the Bank of her refusal to sign, caused her monetary damage in the amount of the loan from the Bank of Commerce which she was required to pay to Commercial National Bank through duress and coercion, and mental and emotional damage, as well as inconvenience and embarrassment. She also sought attorney's fees. The Bank countered by denying plaintiff's allegations and further asserted that by virtue of her action in purchasing the note from Commercial National Bank and obtaining the mortgage which secured that note, that she was estopped from asserting the claims made herein. The Bank also asserted that the indebtedness represented by the promissory note purchased by the plaintiff was an obligation of the community of acquets and gains between plaintiff and Mr. Coburn, and that upon the dissolution thereof, the defendant Bank as a community creditor was entitled to set-off any damages of the plaintiff. The Bank further contended that the mortgage was not null and void but was rather voidable, and that upon the dissolution of the community, the mortgage became valid as to the interest of the mortgaged property belonging to Mr. Coburn.
The trial judge ruled in oral reasons that Mrs. Coburn's problems stemmed not from the Bank's failure to cancel the mortgage, but rather from her husband's actions in executing and recording the mortgage and failing to extinguish the mortgage upon request. He opined that Mrs. Coburn, by negotiating the note of Mr. Coburn together with its collateral security for value and without recourse, was estopped from proceeding against the Bank.

Validity of Mortgage
At the time of the execution of the mortgage here involved, Civil Code Article 2334, as amended by Act 679 of 1976, governed the encumbrance of an immovable owned jointly by the husband and wife. Civil Code Article 2334 after amendment in 1976 read in pertinent part:
"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be leased, mortgaged or sold by the husband without her written authority or consent.

"Where the title to immovable property stands in the names of both the husband and wife, it may not be leased, mortgaged or sold by the husband without the wife's written authority or consent. Where the title to community immovable property declared to be the family home stands in the name of the husband alone it may not be leased, mortgaged or sold without the wife's written authority or consent.
"The limitation on the husband described in the two immediately preceding paragraphs shall not apply where the wife has made a declaration by authentic act that her authority or consent are not required for such lease, sale or mortgage and has filed such declaration in the mortgage and conveyance records of the parish in which the property is situated.
"The declaration may be general as to all such property or it may specify property to which it shall or shall not apply. If the declaration so provides, it may apply generally to property which may be acquired in the future, but a contrary declaration of withdrawal of her authority or consent by the wife may be made and recorded." (Emphasis supplied.) (Effective January 1, 1977)
The property located on Richmond Street was purchased jointly in the names of Mr. and Mrs. Coburn. No authentic act permitting Mr. Coburn to mortgage the *602 property without his wife's consent was executed by Mrs. Coburn. Therefore, under Article 2334 Mrs. Coburn's signature was clearly necessary to mortgage the community property.
Pivotal to the decision in this appeal is the issue of whether the mortgage in question executed without Mrs. Coburn's signature is an absolute or relative nullity. We recognize that Civil Code Articles 2347 and 2353 in their present form clearly state that the encumbrance by one spouse of property subject to equal management without the consent of the other who has not renounced the right to concur, results in a relative nullity.
Of interest in this regard is the recent Fifth Circuit decision of South Central Bell Telephone Co. v. Eisman, 430 So.2d 256 (La.App. 5th Cir.1983). In that case dealing with the relatively null aspect of the new law, the court found that a servitude contract signed only by the husband became an absolute nullity as Mrs. Eisman failed to ratify the servitude agreement. Finding no binding servitude contract, damages were awarded to the Eismans for South Central Bell's trespass onto their property and Mrs. Eisman received a general damage award for the mental pain and suffering she incurred as a result of the trespass.
Also of interest in this regard is the possible argument that the instant mortgage executed under the old law was capable of ratification by virtue of Civil Code Article 3303.[1] However, we believe that the later and more specific Civil Code Article 2334 as it existed at the time of the mortgage should supercede the provisions of Civil Code Article 3303. Our interpretation of the articles is buttressed by the general civilian principle of statutory construction that where a conflict exists between a general and a specific provision of law, the more specific provision must prevail, even if the application of the general principle is restricted. Smith v. Cajun Installation, Inc., 392 So.2d 398 (La.1980); State ex rel. Bickman v. Dees, 367 So.2d 283 (La.1978); Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977); State v. Maduell, 326 So.2d 820 (La.1976). Hence, the general rule of Civil Code Article 3303 regulating the actions of an agent and the effect of the abuse of authority must, in this case, be subordinate to the rule of Civil Code Article 2334, specifically regulating the authority of a husband to mortgage community property.
Civil Code Article 2334, as amended in 1976, was repealed by Act 709 of 1979, effective January 1, 1980. During the brief period that the article was in existence no cases were decided construing the effect of a mortgage executed in contravention of this article. Noting the lack of guiding jurisprudence on this point, we turn to Chapter III of the Civil Code which regulates the effects of laws. Therein Civil Code Article 12 states that whatever is done in contravention of a prohibitory law is void although the nullity be not formally directed.
A prohibitory law is one that is cast in the imperative form, but exhibits a negative, rather than a positive command. If a party's conduct contravenes a prohibitory law, pursuant to Louisiana Civil Code Article 12, it is void and produces no legal consequences. Badon's Employment, Inc. v. Smith, 359 So.2d 1284 (La.1978).
An examination of Civil Code Article 2334, as amended in 1976, reveals that the article contains a negative imperative command that the husband may not lease, mortgage, or sell immovable property owned jointly by both the husband and the wife without the wife's written authority or *603 consent. As such, the wording of the Civil Code Article 2334 places it squarely within the definition of a prohibitory law, and the mortgage which was accepted by the bank with express knowledge of Mrs. Coburn's refusal to sign can have no legal effect under Civil Code Article 12.
The jurisprudence is in accord with this analysis. The 1976 amendment eliminated the affirmative duty of the wife to record her declaration before her consent to mortgage or sell was necessary. Under the law which existed prior to the 1976 amendment, when the wife filed a declaration that her consent was necessary, a subsequent sale or mortgage of the family home without prior consent by the wife was invalid. See R.S. 9:2801 before amendment by Act 679 of 1976, and its predecessor, Act 35 of the 1921 Extra Session. Therefore, the jurisprudence applying the previous law requiring the wife to take affirmative steps to make her consent indispensable to a valid sale, lease, or mortgage of community property should be consistent with the result obtained by applying the 1976 amendment to Civil Code Article 2334.
In Reymond v. Louisiana Trust and Savings Bank, 177 La. 409, 148 So. 663 (1933), appeal after remand, 179 La. 104, 153 So. 529 (1934), the wife, living in the family home but separate and apart from her husband, filed a declaration of homestead in accordance with Act 35, Extra Session of 1921. Nearly five months thereafter, without her knowledge or consent, her husband placed a second mortgage on the home which was subsequently foreclosed and sold at sheriff's sale. The bank paid the sum due on the first mortgage to the sheriff and retained the excess. The wife filed suit seeking that sum and appealed the dismissal of this suit on an exception of no cause of action. In reversing the trial court decision on the exception, the Supreme Court noted the prohibitory language of Act 35 and specifically held that the mortgage was "therefore void, (C.C. art. 12)."
Smith v. Marino, 28 So.2d 780 (La.App. 1st Cir.1947), involved the sale of a home by a husband before his divorce from his wife and after her recordation of a declaration under Act 35 of 1921. After the sale of the home the wife was forced to pay rent to defendant-purchaser and was evicted when she was unable to continue paying rent. The court found that the defendants were bound by the fact that the public records revealed the declaration that her consent was required before the property could be sold. The purchasers were found to be in legal bad faith and the court awarded the wife rent and revenues from the property from the time she was evicted until possession was restored to her or the property could be partitioned.
Azar v. Azar, 185 So.2d 113 (La.App. 4th Cir.1966) is the most recent case decided under previous law construing the legal effect of a transfer or encumbrance of property after the wife filed a declaration requiring her consent to validate such transactions. The Fourth Circuit declared that after the wife filed her declaration in accordance with LSA-R.S. 9:2801, a transfer of community property by the husband as a dation en paiement was null and of no effect.
Thus both the Civil Code and the jurisprudence compel us to reach the conclusion that this mortgage confected without the wife's consent is absolutely null and of no effect. The public records disclosed the property was in the name of both Mr. and Mrs. Coburn, and also disclosed that she had not specifically waived her right to consent to the mortgage by authentic act. Of course, the Bank is at least constructively charged with knowledge of facts disclosed by the public records. LSA-R.S. 9:2721, 9:2722; McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909).
Parenthetically, we note that the instant record fully documents that the Bank was aware that the security device was of questionable validity. The loan officer expressly knew that Mrs. Coburn declined to execute this mortgage jointly with her husband from whom she was living separate and apart. Additionally, the loan officer refused to release the mortgage upon request *604 when Bo Coburn informed the Bank that he and his wife were divorced and that she had received the house on Richmond in the community property settlement agreement.
Commercial National Bank also knew that the insurance company who wrote the life insurance policy assigned by Mr. Coburn as collateral for his debt was concerned about the conspicuous lack of the signature of the beneficiary, Mrs. Coburn, on the assignment agreement. In response to the insurance company's inquiry, Mr. Jackson wrote that the Bank intended that the assignment agreement be recorded without the wife's signature.
In summary, we hold that LSA-C.C. Article 2334, as it existed at the time of the confection of the mortgage in question, was a prohibitory act, and further hold that a mortgage taken in contravention thereof is null and of no effect.

Effect of Bank's Failure to Release Null Mortgage
It will be recalled that plaintiff's suit here sounds in tort in that she seeks damages in the amount she contends she was forced to pay in order to eliminate the offending mortgage, as well as damages for mental and emotional distress, inconvenience, embarrassment and attorney's fees.
Delictual responsibility in Louisiana is based on fault. Civil Code Article 2315. Fault encompasses not only negligence but also acts which are not morally wrong but are merely violative of laws or legal duties. Langlois v. Allied Chemicals, 258 La. 1067, 249 So.2d 133 (1971). The elements of a cause of action in tort are fault, causation, and damage. Seals v. Morris, 410 So.2d 715 (La.1981). Utilizing this analytical framework, we must determine whether the Bank owed a duty to Mrs. Coburn, which was breached by the failure to release, and if so, whether Mrs. Coburn suffered damages as a result thereof.
We have little difficulty determining that the defendant bank owed a duty to release the mortgage in question which was at least constructively known to it to be void, which duty existed at least from the time the bank had actual or constructive knowledge that this plaintiff was the sole owner of the premises affected by the mortgage. The violation of this duty constituted legal fault under LSA-C.C. Art. 2315. We thus turn to the difficult question of the measure of damages which plaintiff has suffered thereby.
In this regard we note that the trial court found as a fact that Mrs. Coburn was unaware that a mortgage was on her home in favor of this defendant until the day before the closing of the sale of her house. Also, the Court noted that while she had thirty days to clear this defect by virtue of her contract with General Harris, she was on the other hand obligated to proceed with her purchase of her new home from Mr. and Mrs. Webb. In order to do so she needed the funds from the sale of her home to General Harris. These findings of fact are not manifestly erroneous and are to be accepted by us. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Although the mortgage was an absolute nullity, it secured a valid obligation represented by a note in favor of Commercial National Bank executed by Bo Coburn. As we will demonstrate hereinafter, the obligation secured by the mortgage is of a community nature. The defendant bank has alternatively contended that if it indeed has damaged Mrs. Coburn due to the maintenance of a null mortgage, that this sum should be set-off against the amount it received to satisfy the note because the note represented a community obligation.
Set-off, or to use the codal term, compensation, takes place by operation of law when two persons are indebted to each other. LSA-C.C. Arts. 2207, 2208 and 2209. However, for compensation or set-off to be applicable, two distinct debts, equally liquidated and demandable, must exist contemporaneously. Hartley v. Hartley, 349 So.2d 1258 (La.1977). The *605 effect of compensation is reciprocal extinguishment of the two debts to the amount of their respective sums, as soon as they exist simultaneously.[2]
Although compensation operates by virtue of law, these articles must be read in tandem with LSA-C.C. Art. 2232, which requires that one who claims that he is exonerated from a debt must prove the payment or the fact which has produced the extinction of the obligation. Thus, construed with LSA-C.C. Arts. 2207 through 2209, the burden of proof rests with the proponent of the plea of compensation. To sustain his burden, the proponent must prove by a preponderance of the evidence that the claim urged as a set-off to plaintiff's claim is equally liquidated and demandable, i.e., that the debt is for a certain amount or for an amount capable of ascertainment by mere calculation in accordance with accepted legal standards, and that it is an obligation of the party against whom the plea is urged. Hughes Realty v. Pfister, 245 So.2d 757 (La.App. 4th Cir.1971); Olinde Hardware and Supply Co. v. Ramsey, 98 So.2d 835 (La.App. 1st Cir.1957).
The debt to Commercial National Bank represented by Bo Coburn's promissory note of $48,173.19 principal, plus $2,023.56 interest, for a total amount of $50,196.75, is for a certain amount and is therefore a liquid claim. Additionally, Commercial National Bank has sustained its burden of proving that this debt is an obligation of the party against whom the plea is urged, Mrs. Coburn, under LSA-C.C. Art. 2357. This article states in pertinent part that an obligation incurred by a spouse before or during the community property regime may be satisfied from the property of the former community after termination of the regime, and from the separate property of the spouse who incurred the obligation. If a spouse disposes of property of the former community for a purpose other than in satisfaction of a community obligation, that spouse is liable for all obligations incurred by the other spouse up to the value of that community property. LSA-C.C. Art. 2357. Applying this article to these facts, Mrs. Coburn was liable for only one-half of the obligation represented by her husband's promissory note at the time she paid that debt; however, she subsequently became liable for the total amount of the debt upon the sale of the house.
We therefore find that Commercial National Bank is indebted to Johana Coburn for its wrongful act in maintaining the absolutely null mortgage in the amount of $50,196.75, the amount she paid for the release of the mortgage, and that Johana Coburn is indebted to the Bank for $50,196.75, representing the amount of the promissory note executed by her husband for which she is liable by virtue of the community status of the obligation. Therefore, at this point, both sums are equally liquidated and demandable, and as a result, are reciprocally extinguished by operation of law.
*606 Thus, the amount paid the Bank to effect removal of the offending mortgage is set-off and extinguished because the debt represented by the mortgage was a community obligation entirely owed by the plaintiff herein when this suit was filed.
Plaintiff also claims that as an item of special damages she is entitled to recover the interest on the loan she obtained from the Bank of Commerce which funds were used to satisfy the obligation with Commercial National Bank. We do not agree. As was previously discussed, Mrs. Coburn was indebted to Commercial National Bank for $50,196.75. Any award by this Court would be merely a speculation on the difference between the interest Mrs. Coburn was required to pay when she obtained the loan from the Bank of Commerce in August of 1981 and the interest she would be required to pay to obtain a loan at some future date when Commercial National Bank demanded satisfaction of the debt.
General damages are applicable in circumstances such as these. See Pack v. Wise, 155 So.2d 909 (La.1963). We set this award at $2,500. Plaintiff has, however, advanced no theory which would allow recovery of attorney's fees herein and that claim is denied.
In summary, we find for the plaintiff in the amount of $50,196.75 which was required to pay off the note secured by the mortgage in question; and we further find that the defendant bank is entitled to a set-off, or compensation, in this same amount as representing a community obligation which plaintiff owed to the defendant.
Plaintiff is awarded Two Thousand Five Hundred Dollars ($2,500) in damages for mental anguish, inconvenience and embarrassment, together with legal interest on that sum. All costs of this litigation are assessed against the defendant. Plaintiff's other demands are rejected.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Johana Walker Coburn, and against the defendant, Commercial National Bank, in the sum of Two Thousand Five Hundred Dollars ($2,500), together with legal interest thereon until paid, and for all costs of this litigation.
REVERSED and RENDERED.
NOTES
[1] "Art. 3303. Mortgage by attorney on property of principal

"An attorney can only hypothecate the property of his principal, so far as he has a special power for that purpose.
"Nevertheless, if the attorney on effecting a loan for his principal, had granted a mortgage, and the latter had received the money for the loan, or if it had been usefully employed for his benefit, the principal would be bound to ratify the mortgage, and might be compelled to execute it."
[2] We are aware of the jurisprudence holding that set-off or compensation is not allowable in a suit for tortious or wrongful conversion because of LSA-C.C. Art. 2210(1), which provides:

"Compensation takes place, whatever be the cause of either of the debts, except in case: (1) of a demand of restitution of a thing of which the owner has been unjustly deprived."
See Neff v. Ford Motor Credit Company, 347 So.2d 1228 (La.App. 1st Cir.1977), and the cases cited therein. However, the tortious conduct involved in this case was not a conversion of plaintiff's funds, but was instead the Bank's failure to release an absolutely null mortgage. We are also cognizant of those cases holding that compensation may not be asserted in tort cases. See for instance, Calvert Fire Insurance Co. v. Lewis, 231 La. 859, 93 So.2d 194 (1957). We construe these cases to mean that an unliquidated claim for damages may not be off-set against a liquidated claim. See American Bank & Trust Co. in Monroe v. Carson Homes, 344 So.2d 456 (La.App. 2d Cir.1977); Dial Real Estate, Inc. v. Isbell, 256 So.2d 133 (La.App. 3d Cir.1971); McDaniel v. Rumore, 110 So.2d 860 (La.App. 2d Cir.1959); Del Bondio v. Albrecht, 181 So. 610 (La.App.Orl.1938). Here both claims are equally liquidated and demandable. Had the Bank instituted suit against Mrs. Coburn on a promissory note, and had she sought to offset this claim by claiming damages under Art. 2315, these cases would have pertinence.