530 So.2d 115 (1988)
Artie M. WEBB, Appellant,
v.
PIONEER BANK & TRUST COMPANY, et al., Appellees.
No. 19844-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1988.
Rehearing Denied September 15, 1988.
*116 Nelson, Hammons & Johnson by Walter D. White, Shreveport, for appellant.
Bodenheimer, Jones, Klotz & Simmons by Gary S. Brown, Shreveport, for appellees.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Alleging that her signature on a note and mortgage had been forged by her husband, plaintiff sued to annul the note, cancel the mortgage, and for damages from the former husband, the bank employee who notarized the mortgage, and the creditor bank. From a judgment ordering cancellation of the mortgage but rejecting the demand for damages, plaintiff appealed.
James Webb and Artie Webb were married in 1941 and in the ensuing years had four children. Mrs. Webb left the management of family finances to her husband, turning her paycheck over to him even after she became the sole wage earner in 1981. Webb did most of the writing of checks and Mrs. Webb never reviewed bank statements. The family banking was done at Pioneer Bank and Trust Company in Shreveport, from which Webb secured several loans over the years.
The Webbs were judicially separated in 1985 and subsequently divorced. Following the separation Mrs. Webb discovered a past due loan notice from Pioneer Bank. Upon inquiry, she was informed that the bank held a note and mortgage, purportedly signed by Mrs. Webb along with her husband on January 28, 1981, for some $40,000. Mrs. Webb informed the bank official that the signatures were not hers, *117 but made the $225.50 monthly payments for several months before filing this suit in August 1985.
At the trial the 61 year old plaintiff testified that she had been the primary financial support of the family for some years prior to the separation and was making $5.17 per hour. Webb, who had a drinking problem, was not employed when the loan in question was made. Mrs. Webb admitted signing the credit application for the loan, but stated that she did not realize its import at the time. Before this loan her house payments were $78 per month. This loan increased those payments to $310 per month. Plaintiff denied signing the note and mortgage in question. There was testimony that, since learning of the forged signature on the instruments, plaintiff had been extremely upset, frequently wept, and suffered physical difficulties.
Robert Foley, an expert in the examination of Forensic Documents, stated he had compared plaintiff's acknowledged signature on cancelled checks and her purported signature on the note and mortgage. It was his opinion that the person who signed the checks was not the same person as the one who signed the note and mortgage.
Gary Parker, who notarized the mortgage, testified that he was formerly employed by Pioneer Bank as a Vice-President and loan officer. He said that Webb was a regular bank customer to whom several loans had been made. In 1979 a $7500 mortgage loan was made to Webb for home improvements, with a portion of the proceeds used to repay a prior loan. Parker knew that Webb was married but never met Mrs. Webb.
When Webb approached Parker for another loan in 1981, Parker provided him with a loan application for the couple to sign and informed Webb that his wife would have to sign the note and mortgage. At the time, the bank's policy was not to lend more than $2,000 without collateral and without the spouse's signature. Parker could not recall whether Mrs. Webb's signature to the note and mortgage was affixed in his presence, although he was the notary.
The note and the mortgage were for $40,600.30, but Webb only received $15,000. Of this, $7448 was used to pay off the prior loan and interest payments (included in the note and mortgage) amounting to $24,475.80. Later, $3,000 was used to buy a bank money order for one of the Webb daughters.
Webb did not testify.
In a written opinion, the trial judge found that plaintiff had proved her signature on the note and mortgage was forged and ordered cancellation of the mortgage as null and void. On the other hand, he concluded that the loaned proceeds of $15,000 had benefited the community. Therefore, the note was deemed a community obligation which was not voided by plaintiff's forged signature. Further, plaintiff's claim for damages was rejected because the trial judge found no evidence the existence of the mortgage caused her any more harm or mental anguish than the knowledge of the existing community obligation alone.
Plaintiff argued, on appeal, that the trial judge erred in finding the forged note created a community obligation because loan proceeds obtained fraudulently by one spouse cannot benefit the community. She also contended that Parker clearly violated the duties imposed upon notaries by La.R. S. 35:1-17 and is liable, as well as his bank employer, for damages.
1) Did the promissory note, containing plaintiff's forged signature, represent a community obligation?
La.C.C. Article 2346 establishes the principle of equal management of community property. It provides that "each spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law." Consequently, the consent or concurrence of both spouses is required only in those instances specified by law. See comment (a) to the article.
La.C.C. Article 2347 mandates the concurrence of both spouses for the alienation, encumbrance or lease of community *118 property. An unauthorized encumbrance of community property is a relative nullity. La.C.C. Article 2353. Also see Coburn v. Commercial National Bank, 453 So.2d 597 (La.App.2d Cir.1984), writ denied, 457 So.2d 681 (La.1984). Here, the trial judge correctly found the mortgage to be null. The question is whether the underlying obligation secured by the mortgage, represented by the promissory note in favor of Pioneer Bank, is a community obligation or is an obligation of Webb's separate estate.
A community obligation is defined as one "... incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse." La.C.C. Article 2360. Plaintiff argues that this loan was the result of an "intentional wrong not perpetrated for the benefit of the community" (La.C.C. Article 2363) and was thus a separate obligation of Webb.
In order to determine whether this money benefited the community, or was used for the "common interest of the spouses", it is necessary to examine the uses to which it was put. Bank records received in evidence revealed that about half of the proceeds was used to repay a community obligation. An officer of the bank testified that, according to its records, Webb also used a substantial amount to purchase a money order for one of the children of the marriage.
The fact that this loan was obtained without plaintiff's knowledge or consent does not affect its validity as a community obligation, since plaintiff's consent was not required by the law. La.C.C. Article 2346. Evidence in the record supports the finding of the trial judge that the loan was incurred for the common interest of the spouses and benefited the community. Therefore, the loan obtained and the promissory note executed by plaintiff's former husband, even if fraudulently, was properly characterized as a community obligation. See Ledet v. Ledet, 496 So.2d 381 (La.App. 4th Cir.1986); First Security Bank & Trust Co. v. Dooley, 480 So.2d 842 (La. App.2d Cir.1985).
2) Although the note represented a community obligation, was plaintiff entitled to damages because of the forgery of her name to the note and the mortgage?
As pointed out, Article 2347 requires the signature of both spouses for the encumbrance of community property. Further, Pioneer Bank would not have made this loan without Mrs. Webb's signature on the note and the mortgage. In the Coburn case, supra, we held that a bank was at fault for not releasing a mortgage when the bank had actual or constructive knowledge that the plaintiff wife, who had not signed the mortgage, was sole owner of the premises affected by the mortgage.
Here, since the loan would not have been made without a note and mortgage signed by plaintiff, she would have had a decisive voice in determining whether a note for some $40,000 should be signed to liquidate a community obligation of about $7500. Of course, as the primary wage earner of the family who would be burdened with payment of the obligation over a period of many years, plaintiff had a direct interest in the transaction. She was not consulted. Her signature was forged to critical instruments, and she was obviously damaged.
There is no question concerning the fault of Webb, who forged the plaintiff's signature on the note and the mortgage. As the notary, Parker was negligent in failing to exercise ordinary care in ascertaining the genuineness of the signature allegedly affixed in his presence. See La. R.S. 35:2, 35:198; Levy v. Western Casualty & Surety Co., 43 So.2d 291 (La.App.2d Cir. 1949). As the employer of Parker, the bank is liable to plaintiff for his negligent action.
In calculating damages, we again note that $15,000 received for execution of the $40,000 plus note and mortgage was used for the benefit of the community. Plaintiff would have expected to pay interest on this. Consequently, consistent with the reasoning in the Coburn case, we find that plaintiff was damaged in the amount of $20,000 by the forgery of Webb and the *119 negligence of Parker, for which the bank was liable. In addition, plaintiff is entitled to the sum of $2500 for her mental anguish and distress.
For these reasons, insofar as it rejects plaintiff's demand for damages, the judgment of the trial court is REVERSED and there is judgment in favor of plaintiff, Mrs. Artie Webb, and against the defendants, James Webb, Gary Parker and Pioneer Bank & Trust Company, in solido, for the sum of $22,500, with legal interest from date of judgment until paid.
All court costs, both in the trial court and on appeal, are assessed to defendants-appellees.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, FRED W. JONES, Jr., NORRIS, MARVIN and SEXTON, JJ.
Rehearing denied.