475 So.2d 402 (1985)
Joseph D. LUPO
v.
Mildred D. LUPO.
No. CW 85/0594.
Court of Appeal of Louisiana, First Circuit.
June 25, 1985.
Rehearing Denied September 11, 1985.[*]
*403 Charles V. Genco, Amite, for relator Jack Guzzardo.
Joseph D. Lupo, pro se.
Martha Jumonville, Mandeville, for respondent Mildred Lupo.
Before WATKINS, CRAIN and ALFORD, JJ.
PER CURIAM
Jack N. Guzzardo is 69 years old, blind in one eye, and has less than normal vision in the other eye. Since January of 1984 he has been in and out of hospitals, having surgery for an aortic aneurysm and for gall bladder removal. On March 15, 1984, he was hospitalized for heart failure.
On the evening of April 26, 1984, Mr. Guzzardo was visited by Joseph Lupo, his long-time friend and attorney for more than forty years. Mrs. Guzzardo was out of the state attending to business affairs of the couple's son who had died several years ago. Mr. Lupo was familiar with Guzzardo's financial status, having prepared the couple's income tax returns for many years.
Mr. Lupo had been engaged in lengthy domestic litigation with his wife, which made it necessary for him to post an appeal bond. He brought two bonds to Guzzardo's house that evening in the total amount of $121,300, to be signed by Guzzardo as surety.
According to Guzzardo, Lupo represented that signing the bonds would not affect or involve him (Guzzardo) in any way. He testified that when he asked Lupo about the effect of the bond, Lupo replied, "No, *404 you don't have anything to worry about". Mrs. Guzzardo, being out of town, did not sign the bonds.
Later, when the Guzzardos tried to sell a piece of property, an attorney preparing an abstract discovered the bonds and refused to allow the sale to proceed. It was at this point the Guzzardos became alarmed at the implications of signing the bonds. They consulted Lupo and asked to be released from the bonds. He assured them he would take care of it.

PROCEDURE:
The former Mrs. Lupo (now Dole) filed a rule to test the sufficiency of the bond. At this time Mr. Lupo indicated to the Guzzardos that the trial court's action would allow them to be released from the bonds. The judge hearing the rule found the Guzzardos solvent and the bonds acceptable for appeal purposes. Subsequently, Mr. Guzzardo hired an attorney who filed a motion to annul and vacate the bonds. Both Mr. and Mrs. Lupo responded with exceptions of lack of jurisdiction, contending the trial court had no subject matter jurisdiction to determine the annulment issue. The trial court sustained the exceptions and Mr. Guzzardo filed a writ with this court. This court granted the writ, stating that the trial court had jurisdiction over the nullity issue, and ordered the trial court to allow the surety to proceed (CW/84/1424).
The trial court held a hearing on the matter and rendered judgment denying the motion to annul and invalidate the bond. The court indicated that Lupo had failed to inform Guzzardo of the implications of signing the bond, and if there were no other parties involved, the court would have invalidated the bond. However, because the other litigant, (the former Mrs. Lupo), was not a party to the misrepresentation, the court refused to release the Guzzardos from the bond. Guzzardo then filed this writ.

ISSUES:
1. Do the circumstances indicate Mr. Lupo perpetrated fraud upon Mr. Guzzardo?
2. If fraud is found, is Mr. Guzzardo entitled to be released from the bond, or does the obligee's lack of participation in the fraud preclude his release?
3. Notwithstanding the fraud issue, is the bond invalid due to the failure of Mrs. Guzzardo to sign the bond, which involved community property?

DISCUSSION:
1. Do the circumstances indicate Mr. Lupo perpetrated fraud upon Mr. Guzzardo?
Fraud, as defined by civil code art. 1953, "is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction."
The facts established at the hearing indicate that as of the date the appeal bond was signed, Mr. Guzzardo, elderly and in poor health, had only recently been released from the hospital and was facing problems (apparently of a financial nature), with his deceased son's estate. It is not contended that Mr. Lupo explicitly lied or made misrepresentations to Mr. Guzzardo about the nature of the document Guzzardo was signing. Lupo informed Guzzardo that the document was an appeal bond.[1] However, Mr. Guzzardo testified repeatedly at trial that he told Mr. Lupo he would sign, but only if it didn't cause him "any troubles." He told Lupo he was having serious troubles with his son's estate and could afford no more problems. Mr. Lupo did not explain the implication of signing the appeal bond. He did not tell Mr. Guzzardo that the bond would be recorded and would act as a mortgage on his property. He did not explain to Mr. Guzzardo under what circumstances Mr. Guzzardo would have to pay on the bond. He repeatedly assured Mr. Guzzardo "there would be no *405 trouble", "everything is taken care of," etc. He was alleged to have said, "you won't have any problems with this ... you won't have any responsibilities." Mr. Guzzardo testified that had he known the bond would act as a mortgage he would definitely not have signed it.
Under the definition of fraud, cited above, it can be concluded that Lupo misrepresented the truth in order to gain an unjust advantage. This is particularly so in light of the relationship between the parties. Any "flavor" of fraud is greatly enhanced by the fact that the person being misled is a client. Another significant factor is that Lupo had been Guzzardo's attorney for almost 40 years and the two were apparently close friends. (Lupo testified he had never received a cent for services rendered to Guzzardo, but this has no bearing on the attorney/client relationship or the fraud issue.) Mr. Guzzardo was certainly in a vulnerable position, considering his age, his health and his recent tragic loss. He was approached by his close friend and attorney for 40 years, was asked to sign the bond, and was assured that there would be no responsibility or liability resulting from the signing.
We have no difficulty in concluding that Lupo perpetrated fraud upon Guzzardo. He needed an appeal bond, of a substantial sum, and by making misrepresentations, and by failing to disclose pertinent information, he obtained one. An attorney should inform his client, who is signing as a surety on a large bond, of every possible implication of that action. To fail to do so, and worse yet, to assure him there would be no responsibility, was certainly a breach of professional duty, and in our opinion, vitiates Guzzardo's consent to the bond so as to make it null.
The fact that Guzzardo did not read the bond might create problems under different circumstances. Certainly when two laymen negotiate a contract, each should read the document and should be held for knowing the contents thereof. However, the circumstances of this case simply lean too heavily against Mr. Guzzardo. He had extremely poor eyesight; he trusted his friend and attorney; the friend and attorney assured him there was no problem in signing the bond and so he complied, relying on this trust. In no other agency relation is a greater duty of trust imposed than in that involving an attorney's duty to his client or former client. Cattle Farms, Inc. v. Abercrombie, 211 So.2d 354 (La.App. 4th Cir.1968).[2]
Our conclusion conforms to those of the trial court who acknowledged that fraud was perpetrated on Mr. Guzzardo. He stated in his reasons for judgment:
We are persuaded that Mr. Guzzardo did not know and was not fully advised of the legal consequences of his signing as Mr. Lupo's surety. More particularly, that Mr. Guzzardo, as a layman, did not know and Mr. Lupo, as a lawyer and friend, did not tell him that the bond would act as a legal mortgage on Mr. Guzzardo's property until Mr. Lupo's liability under the judgment appealed is satisfied.

If the issue presented here was simply one between Mr. Lupo and Mr. Guzzardo we would have no hesitancy in vacating the bond. (emphasis added)
The trial court, however, did not base its decision on the existence or lack of fraud. This leads us to the second issue.[3]

*406 2. Considering that Mr. Guzzardo was fraudently induced to sign the bond, is he entitled to be released from the bond?
The trial court, after making the above-quoted remarks about fraud and misrepresentation, concluded it could not release Guzzardo from the bond because of the detrimental effect on the third-party, (the former Mrs. Lupo), who was not a party to the fraud. The court cited four cases, dated from 1834 to 1917. Only one of the cases stands for the proposition cited (i.e., that even if a surety is induced by fraud to sign a surety contract, he will not be released unless the "obligee" was also a party to, or had knowledge of, the fraud.) That case, Chalaron v. McFarlane, 9 La. 227 (1st Jud.Dist.1836), involved a surety who signed a blank appeal bond which was used for a different purpose than the principal had represented. Aside from being of "ancient age", it is distinguishable in that it involved vested liability on the part of the surety, a judgment having already been rendered against the obligor. Here the liability is still contingent and the "obligee" has means for protection other than the appeal bond.
The trial court also cited C.C.P. art. 5124, which states in part that even if one bond is declared invalid and is replaced by another, the first surety is not released, but is instead liable in solido with the second surety. Relator argues, and we agree, that these articles, dealing with testing the sufficiency and validity of the bond, are inapplicable when a bond is found to be null and void due to fraud. A contract, the consent to which was obtained by fraud, is null and void. Placid Oil Co. v. Taylor, 345 So.2d 254 (La.App. 3rd Cir.1977), writ denied, 347 So.2d 261 (La.1977). These articles contemplate bonds which are defective in some way, but not null and void.
In conclusion, we find no legal authority for the proposition that although a bond was obtained by fraud, it will not be declared null and void simply because the obligee was not aware of the fraud. Further, the Code of Civil Procedure articles dealing with the continued liability of the first surety even after a second bond is entered, and other such matters, should have no applicability to a situation where the bond is found to be null and void due to fraud.
3. Notwithstanding the preceeding issues, is the bond invalid due to the fact it was signed only by one spouse?
C.C. art. 2347 (Alienation of community property; concurrence of other spouse) provides:
The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, furniture or furnishings while located in the family home, all or substantially all of the assets of a community enterprise and movables issues or registered as provided by law in the names of the spouses jointly.
It was established at trial that all property owned by the Guzzardos is community. In Coburn v. Commercial National Bank, 453 So.2d 597 (La.App. 2d Cir.1984), writ denied, 457 So.2d 681 (La.1984) the court interprets the above article in conjunction with LSA-C.C. art. 2353. That article provides that when the concurrence of the spouses is required, the alienation, encumbrance, or lease of community property by a spouse is relatively null unless the other spouse had renounced the right to concur.
The Coburn court found that when one spouse encumbered property subject to equal management, without the consent of the other spouse, that encumberance is a relative nullity. Coburn cites South Central Bell Telephone v. Eisman, 430 So.2d 256 (La.App. 5th Cir.1983), writ denied, 437 So.2d 1154 (La.1983) which also discusses the relative nullity aspect of the above codal articles and nullifies a servitude which was granted by the husband alone. Therefore, this bond, which binds *407 the Guzzardos' community property, yet was not signed by Mrs. Guzzardo, is null for the same reason.

CONCLUSION:
The bond is null, primarily because it was induced by fraud, and also because it binds community property without the consent of both spouses. Since fraud is involved, Mr. Guzzardo should be released from it, regardless of the reliance of other parties, such as the former, Mrs. Lupo.
We note that Lupo filed a supplemental bond (in the sum of $121,300), perhaps in anticipation that there would be problems with the Guzzardo bond. (A copy of this bond is filed in an opposition filed by Lupo.) From the testimony at the hearing it seems that these other sureties (Katye Belle Chehardy and Lucille Fajoni) are also trying to be released from the bond. However, presently the suspensive appeal remains intact backed by the supplemental bond.

DECREE
WRIT GRANTED. The trial court is hereby ordered to vacate its judgment denying the motion to annul and vacate the Guzzardo bonds and to enter judgment in favor of the Guzzardos, declaring the bonds null and void and releasing them from any obligation thereunder. Respondent Lupo is cast with all costs.
NOTES
[*] The timeliness of the second suspensive appeal bond is not before this court in this writ application.
[1] Although there are two bonds signed by Mr. Guzzardo, one for $120,000 and one for $1,300, Mr. Guzzardo recalls signing only the larger one.
[2] See also Civil Code art. 1954 which states that although fraud does not vitiate consent when the party could have ascertained the truth without difficulty, this does not apply when a relation of confidence has reasonably induced the defrauded party to rely on the other's assertions. This article was effective January 1, 1985, subsequent to the date of this incident. However, it seems to be a reflection of earlier jurisprudence.
[3] It was brought out at trial that the "original" of the $1,300 bond, filed by Mr. Lupo, was in fact a copy of the $120,000 bond, which someone had altered by using "liquid paper", to eradicate the $120,000 figure and replace it with the $1,300 figure. Lupo then produced the "real" original of the $1,300 bond, which the handwriting expert pointed out was different from the copy. Lupo admitted at the hearing that he had altered one of the bonds and should have had Mr. Guzzardo initial the alteration. Although this matter was never fully explained, it casts further suspicion on the propriety of Lupo's dealings with the Guzzardos in relation to the bonds.