703 So.2d 751 (1997)
Margie SMITH
v.
Justin FREY and State Farm Insurance Company.
No. 97-CA-0987.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 1997.
*752 W. Keith Hurtt, New Orleans, for Plaintiff/Appellant.
John E. Unsworth, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for Defendants/Appellees.
Before SCHOTT, C.J., and BARRY and LOBRANO, JJ.
SCHOTT, Chief Judge.
Plaintiff was fraudently induced by her attorney into signing a release agreement in which she settled her tort suit against defendants, Justin Frey and his insurer, State Farm Fire & Casualty Company. The attorney endorsed plaintiff's name on the settlement draft for $40,000 and signed a motion to dismiss plaintiff's suit. The suit was dismissed on August 11, 1994. Plaintiff had no knowledge of this until July 1995. At that time she employed present counsel and filed a petition to annul the judgment dismissing her tort suit. After a bench trial the trial court dismissed her suit to annul and she has appealed. The issue is whether plaintiff is bound by her agreement even though she did not read it and was the victim of the attorney's fraud. We affirm.
Plaintiff was bitten by Frey's dog while she was delivering mail for the U.S. Postal Service in June 1990. She employed Michael Lash as her attorney. He filed suit in her behalf in June 1991. She testified that Lash summoned her to his office in August 1994 where he told her State Farm had offered to settle her case for $40,000. All along she had been told by Lash that her case was worth over $300,000, and she was unwilling to accept the settlement offer which was not even as much as her medical bills were.
Asked why she signed the release even though she told Lash that she refused the $40,000, she stated that Lash left the room and returned with a paper which he said she should sign to let the defendants know she was not accepting the offer and was prepared to go to trial. She admitted she signed the document, but she did not read it before she signed it in triplicate originals. A copy of the release she signed is attached to this opinion as an appendix.
It appears that Lash had received from State Farm the release with a draft and a motion to dismiss plaintiff's suit. The draft was payable to Margie Smith and Michael Lash, attorney at law. Apparently Lash endorsed both names on the draft and deposited it into his account even before the day he got plaintiff to sign the release. He signed the motion to dismiss and sent the release and motion to State Farm's attorney who in turn filed the motion and had the case dismissed.
Plaintiff agrees that State Farm at all times was in absolute good faith. Not until a year later did it learn about Lash's fraud. State Farm collected $40,000 from the bank and deposited the funds in the registry of the court with a motion to enforce the settlement for the $40,000. In effect this motion was tried simultaneously with the suit to annul the judgment dismissing the tort suit.
Plaintiff is an educated person having completed two years at Southern University and one year at Delgado Community College in accounting. She held a number of responsible positions with the City of New Orleans and with the federal government before she went to work at the Postal Service. She did not know Lash before she employed him to handle her tort suit and she got his name from the telephone book. Asked why she *753 signed the Receipt and Release document without reading it first she replied:
Well, he was an honestHe appeared to be an honest lawyer and he had all his credentials and everything, and he didn't seem like he was no thief or nothing. I never had a lawsuit before and I just believe the lawyer as he represents you should, you know, do those things. I didn't know they could do it.
The trial court gave the following reasons for judgment:
Margie Smith is well educated and entirely literate. At best, she chose not to read the document she signed.
In Housecraft Div. v. Jones, 120 So.2d 662, (Orleans App.1960) we find:
In Boult[Boullt] v. Sarpy, 30 La.Ann. 494, the Supreme Court stated "signatures to obligations are not mere ornaments," and in Snell v. Union Sawmill Co., 159 La. 604, 105 So. 728, 730, it was said:
If a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done. Murphy v. Hussey, 117 La. 390, 399, 41 So. 692; Baker v. Myatt, Dicks Motor Co., 12 Orleans App. 281.
The fraud was committed by her attorney, and can no way be blamed on State Farm. Her petition to nullify the release will be dismissed.
Fraud committed by a third person vitiates the consent of a contracting party if the other party to the contract knew or should have known of the fraud. La. C.C. art.1956. Plaintiff admits that State Farm did not know of Lash's fraudulent conduct and in no way suggests that State Farm should have known. Regardless, plaintiff may yet vitiate the contract for error if she can meet the requirements of C.C. articles 1949-1952. See comments to C.C. art.1956.
Under article 1949, unilateral error as to a fact which is the principal cause of the contract will serve to nullify a compromise contract only where the other party knew or should have known it was the principal cause. Plaintiff did not prove and cannot prove this element. Although there was error as to cause, State Farm neither knew nor should have known of the error. This is consistent with the law expressed in C.C. art.1954 which provides that fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. In this case, all plaintiff had to do was read the page on which she three times affixed her signature. This third page of the settlement agreement clearly and unambiguously stated that it was a release agreement. The first paragraph on that page provides:
IT IS FURTHER STIPULATED AND AGREED, that my attorney, Michael Lash, is hereby authorized and directed to dismiss all claims expressed in THE LITIGATION against the RELEASED PARTIES, with full prejudice, each party to bear its own costs.
The remaining language quite clearly identifies that the document is a release obtained in settlement.
The second paragraph of article 1954, which provides that the article does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations, is inapplicable. Here, there was no relation of confidence between State Farm and Smith and Smith was not induced to rely upon assertions or representations made by State Farm.
Plaintiff argues that the contract should be vitiated based upon Lupo v. Lupo, 475 So.2d 402 (La.App. 1st Cir.1985). In that case, attorney Lupo perpetrated a fraud upon his client, Mr. Guzzardo, who was 69 years old with serious health problems having just been released from the hospital and facing problems related to his recently deceased son's estate. He was blind in one eye and had poor vision in the other. In addition, the two had enjoyed an attorney-client relationship for approximately forty years. Lupo had the client sign an appeal bond related to Lupo's own divorce proceedings. Lupo did not explain that the bond would act as a mortgage on the client's property and told *754 his client that he would not have any responsibilities related to the bond.
The court held that the fact that the client did not read the bond might create problems under different circumstances. However, the circumstances of the situation could not be held against the client due to his poor health, poor eyesight, and his extremely longstanding relationship with Lupo. Because fraud was involved, the court released the client from the bond. Further, the court's discussion of fraud vitiating consent deals primarily with surety bond rules and not the civil code articles discussed herein. Finally, the court noted that the bond affected community property and was null because it was not signed by Mrs. Guzzardo. Plaintiff cannot show that any of the special factors noted by the Lupo court in vitiating consent exist herein. She is well educated, she does not claim poor eyesight, she does not claim impaired reasoning ability due to very poor health and emotional distress, and she did not enjoy a longstanding relationship with Lash. Lupo is distinguishable on its facts.
Plaintiff argues that she wants only to be returned to the position she was in before Lash victimized her. She contends that no one will be hurt by this result, State Farm can continue with the litigation and she will have a chance for a fair recovery. This overlooks some serious considerations.
First, while Lash ultimately caused this problems by fraud upon plaintiff, she bears some of the responsibility by failing to read what she was signing. Had she acted with the slightest degree of prudence these events would not have occurred. More importantly, this is not a case where no one would be hurt if the release were disregarded and the parties returned to the position they were in before plaintiff signed the release. If this settlement were set aside the message would go out to settling defendants that they can no longer rely on documents signed by plaintiffs in the presence of their attorneys. As a result settlements would become much more difficult to complete.
The law is clear. Plaintiff is not entitled to a nullity of the judgment dismissing her case. Her remedy is to pursue a claim against Lash, the real culprit in the case. A reversal of the judgment below would be a classic example of a hard case making bad law.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.

APPENDIX

RECEIPT, RELEASE AND INDEMNITY AGREEMENT
STATE OF LOUISIANA
PARISH OF ORLEANS
BEFORE ME, the undersigned authority, personally came and appeared Margie Smith, who after being duly sworn, did depose and say that:
I, the undersigned, hereby acknowledge receipt on this day of the total sum of FORTY THOUSAND AND NO/100 ($40,000.00) DOLLARS, from State Farm Fire and Casualty Company.
The term "RELEASED PARTIES", as used in this RECEIPT, RELEASE AND INDEMNITY AGREEMENT, shall include the following: Mr. and Mrs. Justin Frey and State Farm Fire and Casualty Company, as well as its representatives, agents, employees, successors, officers, directors, stockholders, insureds, insurers, heirs, executors, administrators, assigns, partners, and all other persons, firms or corporations or partnerships related to, or in privity therewith.
For the sole and exclusive consideration of the hereinbefore mentioned FORTY THOUSAND AND NO/100 ($40,000.00) DOLLARS the adequacy and sufficiency of which is hereby acknowledged, I do hereby RELEASE, ACQUIT AND FOREVER DISCHARGE, all of the said RELEASED PARTIES, collectively and individually, from any and all actions and causes of action, in law or equity, from all claims, demands and liabilities of any kind whatsoever, past or future, now known as well as unknown or unanticipated, for any and all damages, of each and every type, in any way resulting, or to result from injuries I received on or about June 23, 1990 as a result of an accident involving their *755 dog, in the Parish of Orleans, all as more specifically described and set forth in that certain lawsuit entitled "Margie Smith v. Mr. and Mrs. Justin Frey and State Farm Fire and Casualty Company," No. 91-11958, Division "E" on the Docket of the Civil District Court for the Parish of Orleans, all of which is sometimes hereinafter referred to as "THE LITIGATION."
I understand that this Agreement effects a RELEASE AND DISCHARGE of all my claims for any and all types of damages, past, present, and future, including but not limited to: Any and all types of damages recoverable in a survival action and/or in a wrongful death action; any and all medical and hospital expenses, property damage, physical and mental pain and suffering, disability, grief, anguish, loss of consortium, loss of society, loss of support, loss of love and affection, loss of wages or income, loss of earning capacity, psychological damages, damages for disfigurement, interest, court costs, and attorneys' fees arising out of, or in any way related to the accident and injuries set forth in THE LITIGATION.
IN FURTHER CONSIDERATION of the foregoing payment of FORTY THOUSAND AND NO/100 ($40,000.00) DOLLARS, I, Margie Smith, do hereby agree to indemnify and hold forever harmless all of the RELEASED PARTIES from any and all other claims or causes of action that may be brought by me or by anyone on my behalf, or by anyone who claims to represent my interests or by anyone to whom I subrogated all or part of my claim or cause of action arising out of the accident identified above. I further agree to indemnify and hold forever harmless each of the parties released from any claim or cause of action which may be brought against them by anyone against whom action may be taken by me as a result of the June 23, 1990 accident, whether such action is for indemnity, contribution or whatever, and each of the parties released shall be entitled to plead this obligation and this release in defense of any such claim.
IT IS STIPULATED AND AGREED that this Agreement expresses a full, complete and final compromise and settlement of all matters set forth and asserted and described in THE LITIGATION.
IT IS FURTHER STIPULATED AND AGREED, that my attorney, Michael Lash, is hereby authorized and directed to dismiss all claims expressed in THE LITIGATION against the RELEASED PARTIES, with full prejudice, each party to bear its own costs.
IT IS FURTHER STIPULATED AND AGREED that this agreement and the hereinbefore described payment is not and shall not be construed as an admission of fault or liability on the part of any of the RELEASED PARTIES, but rather is a compromise and settlement of a disputed claim, entered into for the purpose of avoiding the expense and vexation of trial.
I DO FURTHER AGREE that I shall satisfy any and all claims of attorneys representing me in this matter from these settlement funds, as well as the liens, as they may exist, of any and all hospitals that have provided any medical treatments in connection with my injuries as set forth in THE LITIGATION, and I shall hold the RELEASED PARTIES harmless from all such claims.
I, THE UNDERSIGNED, FURTHER STATE THAT I HAVE CAREFULLY READ THE FOREGOING AGREEMENT AND UNDERSTAND THE CONTENTS THEREOF AND SIGN THE SAME BELOW OF MY OWN FREE WILL.
IN WITNESS WHEREOF, I have hereunto set my hand in triplicate this ____ day of __________, 1994.
*756